# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

RAHSAAN FREEMAN, an individual,

    Plaintiff,

v.

U.S. BANCORP, d/b/a U.S. BANK NA and US BANK,

    Defendant.

CASE NO. C10-1544RSM

ORDER ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Rahsaan Freeman filed this action in King County Superior Court, asserting claims of promissory estoppel and negligent misrepresentation against his former employer, U.S. Bancorp ("U.S. Bank"). It was removed to this Court by defendant on the basis of the parties' diversity, pursuant to 28 U.S.C. § 1332. Dkt. # 1. The matter is now before the Court for consideration of defendant's motion for summary judgment. Dkt. # 17. Plaintiff has opposed the motion, and the matter is fully briefed and ready for consideration. For the reasons set forth below, defendant's motion shall be granted and the action dismissed.

## FACTUAL BACKGROUND

Plaintiff worked for U.S. Bank in the loan department from 1997 to 2000. He was terminated from his position in 2000 for committing ethical violations, including using a family member at the bank

ORDER - 1

to process his own second mortgage application, coaching applicants in completing mortgage applications, and falsifying documents, including income verification forms. Deposition of Sharon Bach, Dkt. # 18, Exhibit E, pp. 49, 76, 83-83, 87, 93-94; Deposition of Rahsaan Freeman, Dkt. # 26, Exhibit1, pp. 33-34. The "coaching" involved telling an applicant what income level she needed to need to qualify for a loan. With respect to falsifying documents, the bank determined that in one instance plaintiff altered numbers to change an applicant couple's income from $30,000 and $32,484 to $80,000 and $82,484. *Id*.,., p. 98, 104-05. This falsification was discovered when the same couple applied for a new loan with a different loan officer and listed their incomes correctly (the $30,000 range rather than $80,000). *Id*. In another instance, the employer determined that plaintiff lied on the verification form about making telephone calls to verify income. *Id*., pp. 99-100.

Plaintiff was interviewed by his manager, Ryan Gipple, and Ms. Bach about these ethical violations, and then terminated immediately. *Id*., pp. 49, 81, 86-87, 113; Deposition of Rahsaan Freeman, Dkt. # 26, Exhibit 1, pp. 32-34. He obtained employment that same year, 2000, as a branch manager at First Horizon Home Loans, and worked there until 2003. Deposition of Rahsaan Freeman, Dkt. # 26, Exhibit 1, p. 51. He resigned that position to form his own company, Freeman and Lundt and Associates. *Id*., pp. 52-53. Then in 2007 or 2008, plaintiff went to work at Wells Fargo in commercial real estate loans. *Id*., pp. 55-57. When he learned in 2010 that his division would be dissolved, he applied for a new position with U.S. Bank. *Id*., p. 58. Plaintiff learned of the impending dissolution on or about January 28, 2010, and was precluded by the terms of his severance package from accepting employment elsewhere for two months. *Id.,* pp. 63-64, 101.

Plaintiff testified at his deposition that he applied to work at U.S. Bank again because he was called by a manager, David Leonard. *Id*., pp. 64, 68. Plaintiff informed Mr. Leonard "how I was terminated and that could be a potential roadblock for me being hired there." *Id*. Mr. Leonard responded that he would check with his supervisor, Joey, to see "what steps could be taken next." *Id*., p. 69. Plaintiff further testified that "to the best of my recollection," the reasons for his termination from U.S. Bank in 2000 were doing business with a family member and coaching a client on filling out a loan application. Id., p. 69. Plaintiff could not recall if he also told Mr. Leonard that he was investigated for

ORDER - 2

falsifying loan documents. *Id.*

Plaintiff was subsequently interviewed in person by Mr. Leonard and Johanna ("Joey") Nix, the regional manager. Deposition of Johanna Nix, Dkt. # 26, Exhibit 4, p. 30. Ms. Nix described this interview as "Pretty much being more of a formality." *Id.*, p. 31. She recalled that Mr. Freeman disclosed again that he had previously been terminated by U.S. Bank, but stated he was never told exactly why. *Id.*, p. 33. He stated that he believed it was for the two reasons mentioned (coaching a client and dealing with a family member to get his own loan), but was never given anything in writing. *Id.*, 49. Ms. Nix also stated that there was an inquiry made to Human Resources regarding plaintiff's previous employment and termination, but she was not certain when the process was initiated. *Id.*, p. 33.

Carmen Schofield, U.S. Bank Human Resources specialist, states that document retention policies in effect from 2000 to 2007 provided that personnel files of terminated employees would be retained for seven years. Declaration of Carmen Schofield, Dkt. # 20. Ms. Schofield searched but was unable to find plaintiff's old personnel file. *Id.*, ¶ 6. Stefanie Rodriguez, with Human Resources, also searched and was unable to locate plaintiff's personnel file.[1] Declaration of Stefanie Rodriguez, Dkt. # 19, ¶ 3. In addition, Ms. Nix contacted individuals who had previously worked with Mr. Freeman at U.S. Bank, but they were unaware of the reason for his termination. Deposition of Johanna Nix, Dkt. # 18, Exhibit C, pp. 35-36, 42.

Unable to determine anything further regarding Mr. Freeman's termination from Human Resources or other employees, and relying on his statements regarding the reasons for that termination, Ms. Nix and Mr. Leonard decided to extend an offer to Mr. Freeman. *Id.*, pp. 45, 47, 49, 52. Plaintiff stated in his deposition,

> I don't remember exactly who and when and timing, but after that, at some point, I believe it was David who called me and said that my file was clean, there wasn't anything negative in there, and U.S. Bank had done their due diligence and my past termination was not going to affect my current opportunity at U.S. Bank. And I don't know if it was in that call or another call later but that they were going to extend employment to me.

---

[1] Subsequently, some documents relating to Mr. Freeman were found on microfiche at U.S. Bank headquarters in Minneapolis. Declaration of Stefanie Rodriguez, Dkt. # 19, ¶ 9.

ORDER - 3

Deposition of Rahsaan Freeman, Dkt. # 18, Exhibit A, p. 74.

Plaintiff's offer letter, dated March 3, 2010, extended a "conditional offer" of employment as a business banking officer to begin April 1, 2010. *Id*., Exhibit 8. The last paragraph on the first page states,

> This letter does not create a contract of employment. Your employment with U.S. Bank will be at will and may be terminated by you or by U.S. Bank at any time, with or without notice, for any reason. In addition, the terms of your employment, compensation or benefits may change at any time, without advance notice or consent.

*Id*. Plaintiff acknowledged that he read this letter, including the paragraph regarding "at will" employment. Deposition of Rahsaan Freeman, Dkt. # 18, p. 77-78. When asked at deposition if he understood that his employment was "at will," he responded, "I never really put any thought into it." *Id.,* p. 80. When asked if he understood what "at will" means, he answered simply "Yes". When asked if he understood that he could be terminated for any reason, he responded, "Not necessarily." *Id*.

Plaintiff began working at U.S. Bank on April 1, 2010. *Id*., p. 84. He started training in the Bellevue office with David Leonard, but his desk was set up in Kent, Washington. *Id*. Shortly thereafter, Kimberli Reichert, who works for U.S. Bank in corporate security in the Denver office, received a telephone call from someone in corporate security in the Kent office. Declaration of Kimberli Reichert, Dkt. # 21, ¶ 4. Tanya Vivolo and/or Bridie Winger noticed that a desk was set up for Rahsaan Freeman, and they were concerned because they recalled him from 2000 and knew he had been terminated. *Id*., ¶ 5. Ms. Reichert did not have possession of any files relating to Mr. Freeman, as corporate security documents would not be retained for ten years unless there were a legal hold. ¶ 8, 9. Ms. Reichert called Sharon Bach to learn more about the circumstances of Mr. Freeman's termination, and also called Jan Coonley in Human Resources. *Id*., ¶¶ 6, 7.

Sharon Bach stated in her deposition that she had conversations with Kim Reichert, Jan Coonley, David Leonard, and Joey Nix, and that she told them that she recalled the circumstances of Mr. Freeman's termination in 2000. Deposition of Sharon Bach, Dkt. # 18, Exhibit E, pp. 38-39. She explained that he had been terminated for loan fraud, and that he had admitted to loan fraud. *Id*., p. 38. After David Leonard mentioned that Mr. Freeman had been working in the "brokered loan program," Ms.

ORDER - 4

Bach searched her files and discovered that she had retained the brokered loan program file. *Id.,* p. 42. That file contained documents relevant to Rahsann Freeman. *Id.*, p. 17.

At this time, Ms. Nix placed Mr. Freeman on paid administrative leave pending further investigation. Deposition of Johanna Nix, Dkt. # 18, Exhibit C, p. 54. After reviewing all the information, and talking again to Mr. Freeman, Ms. Nix and Mr. Leonard decided to terminate plaintiff. *Id.*, pp. 65-66, 70; Deposition of David Leonard, Dkt. # 18, Exhibit B, p. 63-64. As Mr. Leonard explained,

> Q. What was the reason that you believed termination was appropriate based on these documents?
>
> A. Because he didn't disclose everything that had taken place; that it was much more grandiose than we were led to believe. We were led to believe it was two instances that he thought he was being terminated for when actually there was many of the same situation. He didn't disclose all of the information and falsifying documentation, falsifying employment and income verification.
>
> There was just stuff when — Joey had asked him before, Is there anything else other than what you have told us that we need to know about before we go to Jan? Because we are putting our necks on the line if we are going to do this. We are going to go to Jan and ask if we can move forward now that we have done our due diligence.
>
> He said there is nothing else.
>
> And then a lot more came to light that there was a lot more.

Deposition of David Leonard, Dkt. # 18, Exhibit B, p 63-64.

Mr. Freeman was terminated on April 26, 2010, a few weeks after he started working. David Leonard and Joey Nix called him to advise him. *Id.*, p. 65. Mr. Leonard mentioned "falsifying of the income for customers he had done loans for" as a reason. *Id.* Mr. Freeman denied "having done this," and said he was going to seek legal action. Deposition of Johanna Nix, Dkt. # 18, Ex. C, p. 72, 74. Ms. Nix asked him why he had not sought legal advice in 2000 if he thought the termination then was so wrongful, and he responded that he was humiliated and "just wanted to move on." *Id.*, pp. 74-75. At this point, Ms. Nix felt it was in the best interest of U.S. Bank to terminate plaintiff. *Id.*, p. 75.

On these facts, plaintiff filed this complaint, asserting state law claims of promissory estoppel and negligent misrepresentation. The Court has jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are

ORDER - 5

diverse in citizenship. Defendant has moved for summary judgment as to both claims.

DISCUSSION

I. **Legal Standard**

Summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and ththe movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The evidence is viewed in the light most favorable to the non-moving party. *Id*. However, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F. 3d 1216, 1221 (9th Cir. 1995). It should also be granted where there is a "complete failure of proof concerning an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to prevent summary judgment. *Triton Energy Corp.*, 68 F. 3d at 1221.

II. **Promissory Estoppel**

Promissory estoppel requires the existence of a promise. *Klinke v. Famous Recipe Fried Chicken, Inc*., 94 Wash.2d 255, 259, 616 P.2d 644 (1980). The five elements of a promissory estoppel claim have been described by the Washington Supreme Court: (1) a promise, (2) that promisor should reasonably expect to cause the promisee to change his position, and (3) actually causes the promisee to change position, (4) justifiably relying on the promise, (5) in such a manner that injustice can be avoided only by enforcement of the promise. *Haven v. C & D Plastics, Inc.*, 124 Wash. 2d 158,171-72, 876 P.2d 435 (1994); *citing Klinke*, 94 Wash. 2d at 259 n. 2.

Plaintiff cannot meet the first requirement, that of demonstrating the existence of a promise. A

ORDER - 6

promise as defined by the Washington courts is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Havens v. C & D Plastics, Inc.,* 124 Wash. 2d at 172. The promise must be clear and definite to support a claim of promissory estoppel and overcome Washington's rule of termination at will. *Id*. at 173 ("We agree with the weight of authority that where the terminable at will doctrine is concerned, the promise for promissory estoppel must be a 'clear and definite promise.'" ) Plaintiff has failed to produce sufficient facts to demonstrate a clear and definite promise. To the contrary, the offer letter clearly stated that his employment was "at will" and could be terminated at any time, for any reason. Despite his protestations that he saw the "at will" clause only after he had verbally accepted the employment offer, plaintiff cannot reasonably argue that he was promised continued employment at U.S. Bank. He stated in his deposition that he understood from his telephone conversation that "they were going to extend employment to me." Deposition of Rahsaan Freeman, Dkt. # 18, Exhibit A, p. 74. Nowhere does plaintiff allege a binding verbal promise. He cannot reasonably argue, in light of the "at will" caveat in the offer letter, that he justifiably understood a commitment to permanent employment had been made in the telephone conversation.

Instead, plaintiff asserts that the promise was made when Mr. Leonard assured him the bank had performed their "due diligence" so that his prior termination would not be a problem for him. Declaration of Rahsaan Freemen, Dkt. # 27, ¶ 4. This argument is unavailing. Plaintiff has not demonstrated what clear and definite promise was contained in this statement regarding "due diligence." Viewing the facts in the light most favorable to plaintiff, Mr. Leonard's statement that U.S. Bank "had done their due diligence" was limited to the facts and circumstances plaintiff had reported: namely coaching a client in filling out the loan application, and applying for his own loan with a family member.

ORDER - 7

Plaintiff has pointed to no promise that the bank would disregard other prior misconduct on plaintiff's part should it come to light, as it eventually did.

Plaintiff's promissory estoppel claim fails for lack of a clear and definite promise. Defendant's motion for summary judgment shall be granted as to this claim.

**III. Negligent Misrepresentation**

Washington courts have adopted the Restatement (2d) of Torts §552 as the standard for the tort of negligent misrepresentation:

> One who, in the course of his business, profession or employment, . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Havens v. C & D Plastics, Inc.,* 124 Wash. 2d at 180 *citing Haberman v. WPPSS*, 109 Wash. 2d 107, 161-62 (1987) (*quoting Restatement (Second) of Torts* § 552(1) (1977).

Thus to prevail on his claim, plaintiff must demonstrate that (1) the defendant provided false information for his guidance in a business transaction; (2) the defendant knew or should have known that the information was supplied to guide plaintiff in that business transaction; (3) defendant was negligent in obtaining or communicating the false information; (4) plaintiff relied on defendant's false information; (5) plaintiff's reliance was reasonable; and (6) the false information was the proximate cause of plaintiff's damages. *Ross v. Kirner*, 162 Wash. 2d 493, 499 (2007) *(citing Lawyers Title Insurance Corp. v. Baik*, 147 Wn. 2d 536, 545 (2002). The proof of the negligence must be clear, cogent, and convincing. *Havens,* 124 Wash. 2d at 180, *citing Haberman v. WPPSS*, 109 Wash. 2d at 161-62.

Plaintiff has not presented any evidence of a false statement. He simply asserts that the bank

ORDER - 8

misrepresented that it had done its "due diligence" regarding his prior employment. Plaintiff's Opposition, Dkt. # 25, p. 21. However, he has not presented any facts to show how Mr. Leonard's statement was false, nor has he asserted what "due diligence" means in this context. He does not dispute that the bank searched for his personnel file but was unable to find it because such records are not retained that long, and therefore necessarily relied on plaintiff's own account of his prior termination. It is indeed ironic that he describes the bank's reliance on his own statements as a lack of "due diligence."

Plaintiff's conclusory assertion that Mr. Leonard's "due diligence" statement was false lacks any evidentiary support, let alone support that is clear, cogent and convincing. Defendant's motion for summary judgment shall accordingly be granted as to this claim.

## CONCLUSION

Defendant's motion for summary judgment (Dkt. # 17) is GRANTED as to the two claims in plaintiff's complaint, and this action is hereby DISMISSED. The Clerk shall enter judgment in favor of defendant.

Dated this 9th day of March 2012.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 9